JUSTICE RICE
dissenting.
¶46 I dissent.
¶47 I begin by pointing out that the Court has left the election process unresolved. Seven disputed ballots are before the Court. In determining the validity of some, but not all, of the ballots, the Court has resolved the election, but has, nonetheless, made it impossible for election officials to complete the canvass of the election. The canvass constitutes a final determination and complete count of all ballots cast in each election for each candidate and ballot issue. See § 13-15-501 et seq., MCA. Leaving two of the seven challenged ballots in limbo, without a declaration of validity or invalidity, will make it impossible for the “total votes for each individual,” see § 13-15-506(d), MCA, to be certified by the board of county canvassers to the board of state canvassers, and thereafter for the Secretary of State to prepare and file in the official records of his office the final report of the canvassing process.
¶48 It might be assumed that, because the Court is not reversing the District Court’s holding on two of the disputed ballots, that the District Court’s judgment is affirmed as to those ballots, and they should therefore be counted in favor of Rick Jore. Of course, affirming the District Court’s analysis and judgment on two of the contested ballots only serves to cast doubt upon the Court’s decision on the remaining ballots.
¶49 In support of his argument that this Court should utilize a deferential review of the determination of voter intent made by local election officials, Jore offers the holding of the West Virginia Supreme Court of Appeals in State ex rel. Bowling v. Greenbrier County Comm’n. As Jore correctly notes, the Court in Bowling held that the trial court erred when it overturned the voter intent decisions made by the local election commission, and further held that deference must be given to the work of such local commissions. Bowling, 575 S.E.2d at 262. Bowling is on-point authority in support of Jore’s argument.
¶50 However, the Court fails to address the purpose for which Jore *272 has cited Bowling and instead seizes on the result in Bowling, which it finds supportive to the result here, thus concluding that Bowling cannot support Jore’s standard of review argument. See ¶ 11. The Court’s unresponsive avoidance of Jore’s actual argument notwithstanding, it is not Bowling’s result which is significant, but, rather, the analysis that case offers regarding the proper review of the very questions now pending before this Court. That is the purpose for which Jore has cited it.
¶51 The point which the Court avoids is Bowling’s holding that the determination of a voter’s intent from a disputed ballot is an issue of fact which has initially been made by officials employed to do so-a factual decision which should be deferred to:
[Wjhat did the voter intend, or was it impossible to ascertain that intent with reasonable certainty? ... A question about a matter of fact-the ascertainability of the voter’s intent, and what that intent, if ascertainable, was-is squarely within the province of the finder of fact, the Commission. While we recognize that in the instant case reasonable minds can certainly differ on the answer to this question, that disagreement serves nicely to make the point that a court should not in such a case say that the Commission was clearly wrong in making its factual determination.
Bowling, 575 S.E.2d at 262 (citation omitted). The Bowling court reasoned that, in the absence of evidence of fraud, courts “should be cautious about ‘monkeying’ with the reasoned determinations of designated election officials -particularly when judicial intervention would result in the disenfranchising of voters.” Bowling, 575 S.E.2d at 259 (emphasis added). Of course, that is what this Court is doing today-disenfranchising voters-because it believes local election officials misinterpreted the ballots at issue. In doing so, the Court insists, in contrast to Bowling, that its review of the facts illustrating voter intent should be de novo, offering two reasons: (1) that “nothing” in the 2003 statutory amendments “suggests a desire on the part of the Legislature to give increased discretion to local election officials,” see ¶ 28; and (2) that “nothing” in the 2003 amendments “statutorily overruled this Court’s precedents, “ see ¶ 12.1 submit that, by insisting that its sees “nothing,” the Court ignores the elephant in the room. ¶52 Whether or not the Court can see it or will acknowledge it, there has been an undeniably historic upheaval in the law governing elections in the last four years, including fundamental changes in the process of voting and of counting ballots. The United States Supreme *273 Court has declared that the Constitution prohibits “arbitrary and disparate treatment of the members of the electorate.” Bush v. Gore (2000), 531 U.S. 98, 105, 121 S.Ct. 525, 530, 148 L.Ed.2d 388, 399. We now understand that the Constitution requires the “formulation of uniform rules to determine voter intent” with regard to recurring voter practices in marking a ballot and the application of such uniform rules. Bush, 531 U.S. at 106. Ballots must be judged in accordance with these uniform standards in order to guard constitutional rights. Unfortunately, the Court today simply tosses the “uniform rules to determine voter intent” which were formulated by the legislative and executive branches in response to this constitutional mandate, concluding that they don’t apply, see ¶ 25, thereby tossing the very mechanism that guarantees the constitutional rights of the voters. This re-creates the very problem criticized in Bush: “the problem inheres in the absence of specific standards.” Bush, 531 U.S. at 106. The Court’s message: the other branches of government can do whatever they want, but we will determine voter intent on our own terms-and without the new constitutional standards. The Court thus invalidates the challenged ballots on the basis of its “de novo review”-in actuality, the personal reactions or opinions of individual justices.
¶53 Believing our duty is to interpret and apply the law as enacted, I turn to that law. Regarding standard of review, the Court first concludes that nothing in the 2003 amendments “suggests a desire of the Legislature to give increased discretion to local election officials.” I partly agree. The 2003 amendments did not suggest increased discretion in local officials. They required it.
¶54 After long and careful study, the Legislature enacted a new system of balloting in 2003 and mandated that local election boards “shall count and determine the validity of each vote in a uniform manner.” Section 13-15-206(1), MCA. In a dramatic departure from the past, “questionable votes” were required to be counted if the voter’s intent could be “clearly determined and agreed upon by a majority of local election judges” who would apply the uniform standards adopted by the Secretary of State. Section 13-15-206(4)(a), MCA. Thus, the new process required the review and action of local judges, who would count a questionable ballot on the basis of a majority vote of the election judges applying uniform standards to interpret voter intent. Inherent in this new process-including the majority vote-is the *274 exercise of discretion by the local election officials.[1]
¶55 The uniform standards, mandated and incorporated by statute, were, after deliberate study, adopted by the Secretary of State. The Court’s erroneous application of these standards is hereinafter discussed. Charged with applying the new standards, election judges were thus given the duty of interpreting such voter indications as “hesitation mark,” “heavy mark,” “partially completed mark,” "connective line or arrow,” “no clear mark,” “residue,” “some erasure,” “no erasure,” “words,” “statements” and whether a voter’s marks are “consistent.” The daunting task of interpreting such subjective voter indications well illustrates the discretion placed with local officials.
¶56 But the officials were provided assistance in accomplishing this task. Election judges were then trained in application of the uniform standards. One element of the Florida re-count process faulted in Bush was election judges “who had no previous training in handling and interpreting ballots.” Bush, 531 U.S. at 109. That defect was specifically avoided here, as the record reflects that local election judges were trained in the interpretation of voter intent. The significance of training has been completely overlooked by this Court, insisting that supreme court justices can interpret ballots by de novo review, without training and without experience, better than trained and experienced election officials can. However, unlike election officials, who have reviewed numerous ballots in the course of their training and experience, the justices of this Court have had precious little experience in interpreting voter intent from marks made on a ballot.
¶57 For these reasons, I disagree with the Court’s conclusion that the new voting process did not provide discretion to local officials. To the contrary, discretion was specifically given to those officials, and they were trained in the exercise of it. Here, a bipartisan election board exercised that discretion by unanimously voting to count the seven challenged ballots. I believe that this Court, untrained and inexperienced in ballot interpretation, should review the work of election officials, who by training and experience are exposed to numerous questionable ballots, under the same kind of deferential standard we usually employ when reviewing agency determinations *275 based on agency training and expertise, that is, whether the agency’s findings of fact are clearly erroneous as unsupported by substantial evidence.
¶58 Neither is it correct to say that “nothing” in our case law has been changed. The Court repeats our prior holdings as if reiteration will somehow preserve their validity in the post -Bush world: “this Court has insisted that the voter’s intent be clear without any speculation.” See ¶ 22. The Court can insist and repeat these holdings all it wants, but they are no longer the law, and it is simply arrogant to hold otherwise. Whether we deem the change good or evil, the reality is that new standards have been placed in the law which now require an assessment of ballots which have confusing or contradictory indications. Obviously, the task of determining voter intent from these various actions may not be easy-indeed, it may be frightfully difficult to determine voter intent from such indicators as “hesitation marks,” thus underscoring the need for training-but it is a task that cannot be avoided by closing our eyes to the new standards and simply reciting our outdated case law, even if we believe that our old law provided a superior standard.
¶59 Our case law was decided prior to the development of the new voting process, including the adoption of uniform standards for interpretation of voter marks, training in ballot interpretation, ballot review or “clarification” and the exercise of discretion by local officials who are required to vote on these matters. The law, that is, § 13-15-206(4)(a), MCA, and the standards incorporated thereby, now require “questionable votes” to be counted, if, by a majority vote of election officials, voter intent can be determined pursuant to the uniform standards. It then becomes the task of the courts to determine whether those officials properly exercised their discretion. Courts should let officials do the job they are supposed to do, and then review their work accordingly. This Court is not designated to be, and, very importantly, is not trained to be, election judges. This is the import of the Bowling case-an understanding of the proper role of the courts. I now turn to what should be this Court’s appropriate task.
¶60 Review of the evidence relied upon by the local officials and reviewed by the District Court begins with the most critical fact, largely ignored by the Court: that on all seven contested ballots, there is a clear, complete, accurately marked, unencumbered by any other mark, unmistakable vote in favor of Rick Jore. Then, all of the ballots have a second designated voting area marked as well, that is, the circular voting area is also filled in for Jack Cross. However, each *276 ballot also contains some additional mark or indication made by the voter on or near the second voting area. The question then becomes, how should these additional markings be interpreted?
¶61 The Court holds that these ballots cannot be interpreted because none of the uniform standards apply to this situation, see ¶ 25, and must therefore be invalidated. However, the election judges trained in ballot interpretation thought differently, as did the District Court. Both the judges and the trial court applied Rule 44.3.2402(l)(h), ARM, which provides as follows:
The following general rules shall apply in a count or recount of paper and opti-scan ballots:
(h) more than one designated voting area has been marked, but a clear word, mark or statement is used to indicate the correct vote. The election official shall clarify the ballot and cause a vote to be counted for the designated voting area indicated as the correct vote.
The facts here fall under this Rule. There is “more than one designated voting area” which was marked. Further, on all seven ballots, there is clear evidence of additional markings~“word, mark or statement”-made by the voter in each case. Under the Rule, it thus became incumbent upon the election officials to “clarify the ballot” and determine whether they could clearly count the ballot for the voter’s correct choice. Unanimously, the bipartisan local board voted that these ballots, with their individual markings, were accurately voted for Rick Jore pursuant to Rule 44.3.2402(l)(h), ARM, and the District Court affirmed their decision.
¶62 Exercising a proper, deferential review of the seven ballots, I would conclude that there is substantial evidence to support the findings of the election judges. Five of the ballots have large “X’s” drawn through the marked voting areas for Jack Cross while the marked voting area for Rick Jore is undisturbed. The sixth ballot has an erasure or smudge in part of the marked voting area for Jack Cross, as well as a large squiggly line drawn through and extending above, below and on either side of the marked voting area for Jack Cross, while the marked voting area for Rick Jore is again undisturbed. The seventh ballot has a smudge or erasure and a small squiggly line through part of the marked voting area for Jack Cross, a separate line running through the word “Jack” and most, if not all, of the word “Cross” before continuing to the word “Republican,” and three initials or letters written adjacent thereto; again, the marked voting area for *277 Rick Jore is undisturbed.
¶63 All of these ballots fall neatly within a single, factual category governed by Rule 44.3.2402(1)(h), ARM: all of the voters indicated two choices on their ballot, only to go back and, by way of additional markings, eliminate their choice for Jack Cross and allow their vote for Rick Jore to stand undisturbed, thereby clearly indicating their intent, or “correct vote.” This amply demonstrates that the actions of the election judges were supported by substantial evidence.
¶64 Having reached this conclusion, it remains only to point out that the Court’s conclusion that these ballots violated the “clear instructions posted for voters at each voting station” to ask for a new ballot, see ¶ 35, is simply irrelevant, and only serves to create the mistaken impression that this is the law. While we would hope that voters would ask for a new ballot when a mistake is made, and even request them to do so, experience-as found by the District Court-tells us that they rarely will. More to the point, however, the law does not require it. To the contrary, the law requires election judges to attempt to “clarify” ballots which are marked with multiple markings. Indeed, the law now specifically anticipates such situations. The election judges in this case fulfilled the law as they were supposed to, and I would affirm. By reversing the credible actions of local officials and the application of the law’s uniform standards for determining voter intent, the Court today has disenfranchised voters and abandoned the constitutional principles required by Bush. Further, the Court has signaled that no election dispute can be resolved until contested ballots are reviewed by supreme court justices. For what reason did this Court deny original jurisdiction and require that the District Court undertake the matter? It did so because there is a statutory process that is supposed to mean something. Today, the Court has declared it does not.
¶65 I would affirm the District Court.

 I use the term “local officials” generically. The detailed process involved in handling and counting ballots includes an observation board, receiving board, inspection board, duplication board, write-in tally board, ballot tabulation board, ballot sealing board, election results board, and resolution board. See Rule 44.3.1765 et seq., ARM.